IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GLADYS L. WOODS,                    )
                                    )
                   Plaintiff,       )
                                    )
        -versus-                    )          Civil Action No.: 1:05CV00635
                                    )
JO ANNE B. BARNHART,                )
Commissioner of Social Security,    )
                                    )
                   Defendant.       )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Gladys L. Woods, brought this action pursuant to Section 205(g) of

the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review

of a final decision of the Commissioner of Social Security denying her claim for

Disability Insurance Benefits under Title II of the Social Security Act (the "Act").  The

parties have filed cross-motions for judgment, and the administrative record has

been certified to the court for review.

## Procedural History

Plaintiff filed an application for Disability Insurance Benefits (DIB) on July 8,

2002, alleging a disability onset date of January 3, 2002.[1]  Tr. 44.  The application

was denied initially and upon reconsideration.  Tr. 23, 26.  Plaintiff requested a

---

[1]     Both the ALJ, Tr. 12, and Defendant, Def.'s Br. at 1, state that Plaintiff applied also
for Supplement Security Income (SSI), yet the court is unable to find any support therefor
in the transcript.

hearing de novo before an Administrative Law Judge (ALJ). Tr. 37. Present at the hearing, held on August 10, 2004, were Plaintiff, her attorney, and a vocational expert (VE). Tr. 151.

By decision dated October 12, 2004, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 12. On May 17, 2005, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 4), thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through March 31, 2004.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant's two-level lumbar [degenerative disc disease], osteoarthritis, hypertension and obesity are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.   The claimant has the following residual functional capacity:  the ability to perform light work activity with the following restrictions:  the need for a sit-stand option at will; and, only occasional bending at the waist.

7.   The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

8.   The claimant is an "individual of advanced age" (20 CFR §§ 404.1563 and 416.963).

9.   The claimant has "a limited education" (20 CFR §§ 404.1564 and 416.964).

10.  The claimant has transferable skills from skilled work previously performed as described in the body of the decision (20 CFR §§ 404.1568 and 416.968).

11.  The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

12.  Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.03 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a companion (D.O.T. # 309.677-010 - light, SVP=3 - 1,000 jobs in North Carolina, and 50-100,000 jobs nationally) and as a personal attendant (D.O.T. # 309.674-014 - light, SVP=3 - 1,000 jobs in North Carolina, and 50-100,000 jobs nationally).

13.  The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

Tr. 18-19.

## Analysis

In her brief before the court, Plaintiff argues the Commissioner's findings are in error because the ALJ (1) mistakenly found she had "transferable skills"; (2) erred in her assessment of Plaintiff's credibility; and (3) failed to assess the impact of Plaintiff's obesity on her residual functional capacity. The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

## Scope of Review

The Act provides that, for "eligible"[2] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); see also § 1382c(a)(3)(A) (as to SSI claims).[3]

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration, by regulation, has reduced the statutory definition of

---

[2]  Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1), and for SSI at 42 U.S.C. § 1382(a).

[3]  Because the court sees no evidence that Plaintiff applied for SSI, it will refer only to the regulations in Part 404 of the Code of Federal Regulations (C.F.R.), which apply to federal old-age, survivors, and disability insurance. Regulations that apply to SSI for the aged, blind, and disabled, are contained in Part 416 of the C.F.R. Because the relevant portions of the two sets of regulations are identical, however, the citations herein will suffice in the event this Recommendation also applies to an SSI claim.

4

"disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. 20 C.F.R. § 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this

5

conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964).

If there is substantial evidence to support the decision of the Commissioner, that

decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Pertinent Evidence Presented

As of the date of the ALJ's decision, Plaintiff was fifty-nine years of age.

Tr. 13.  The ALJ found that she has an eleventh grade education and past relevant

work (PRW) as a nurse assistant and a shuttle bus driver.  According to the ALJ,

Plaintiff initially alleged disability due to hypertension, left hip and back pain, arthritis,

obesity, degenerative disc disease, and bilateral knee pain.

The ALJ found that Plaintiff had not engaged in substantial gainful activity

since her alleged onset of disability (AOD).  She also determined that Plaintiff met

the disability insured status requirements of the Act and continued to do so through

March 31, 2004.  Further, the ALJ found the medical evidence to establish that

Plaintiff suffered from the severe impairments of two-level lumbar degenerative disc

disease, osteoarthritis, hypertension, and obesity.  She concluded, nevertheless,

that none of these impairments met or equaled any of the Listing of Impairments.

1.  Transferability of Skills

At step five of the sequential evaluation, the Commissioner bears the burden

of providing evidence of a significant number of jobs in the national economy that a

claimant could perform.  Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002).  To

improve both the uniformity and efficiency of this determination, the Commissioner

promulgated medical-vocational guidelines, located at 20 C.F.R. Part 404, Subpart P, appendix 2 (hereinafter cited to as the "Grids"). Heckler v. Campbell, 461 U.S. 458, 461 (1983). If the claimant has no nonexertional impairments that prevent him from performing the full range of work at a given exertional level, the Commissioner may rely solely on the Grids to satisfy her burden of proof. Coffman v. Bowen, 829 F.2d 514, 518 (4th Cir. 1987); Gory v. Schweiker, 712 F.2d 929, 930-31 (4th Cir. 1983). In the case, however, where a claimant suffers from both exertional and nonexertional limitations, the Grids "are not conclusive but may only serve as guidelines." Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989) (citing Wilson v. Heckler, 743 F.2d 218 (4th Cir. 1984)). See also 20 C.F.R. § 404.1569a(d). In such a case, the Commissioner must prove through vocational expertise that jobs exist in the national economy which the claimant can perform. Walker, 889 F.2d at 49-50.

The Grids

consist of a matrix of the four factors identified by Congress – physical ability, age, education, and work experience – and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled.

Heckler, 461 U.S. at 461-62 (footnotes omitted). See also Grids, § 200.00(a); Social Security Ruling (SSR) 83-10, 1983-1991 Soc. Sec. Rep. Serv. 29, 30 (West 1992).

7

As earlier stated, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform a significant range of light work. At the time of the hearing, Plaintiff was fifty-nine years old, which the regulations define as a person of "advanced age." 20 C.F.R. § 404.1563(e). She completed school only through the eleventh grade, which is a "limited" education under the regulations. Id. § 404.1564(b)(3). Plaintiff has not specifically challenged any of these findings.

Plaintiff's argument is with the fourth Grid criterion, work experience. The ALJ, relying on the testimony of a VE, found that Plaintiff's PRW imparted "transferable skills from skilled work." Tr. 17. Thus, Plaintiff fell under Rule 202.03 of the Grids, which deemed her not disabled. If the ALJ had found that Plaintiff's PRW was either unskilled, or utilized no transferable skills, Plaintiff would have been deemed disabled under the Grids. See Grids, Rules 202.01, 202.02.

Because the ALJ found that Plaintiff could not perform the full range of light work, she used the Grids solely as a framework for her decision. She elicited further testimony from the VE that Plaintiff could perform two jobs which existed in significant numbers in the national economy, which jobs utilized Plaintiff's transferable skills. See Tr. 179. The ALJ relied on this testimony to find Plaintiff not disabled. Tr. 18.

Plaintiff contends, however, that there is no evidence that she acquired *any* skills from her nurse aide job. Indeed, Plaintiff testified only that she helped patients in and out of bed and bathed them. Tr. 163. According to her "Work History

8

Report," the job consisted of lifting: patient from bed to wheelchair and back again, and from shower chair. Tr. 68. Her Disability Report was more detailed; Plaintiff wrote that she took care of the elderly: bathing, dressing, lifting, and feeding them – "just taking care [of] the sick." Tr. 55. Plaintiff argues that these are not skills but, rather, "the mere 'carrying out of simple job duties.'" Pl.'s Br. at 5 (quoting SSR 82-41, 1975-1982 Soc. Sec. Rep. Serv. 847, 848 (West 1983)).

Defendant counters that the record does not support Plaintiff's allegations that her PRW was so limited. Relying on the <u>Dictionary of Occupational Titles</u> (hereinafter, the "DOT"),[4] she explains that the "nurse assistant" job is semi-skilled and "generally requires several months to learn." Def.'s Br. at 15 (citing DOT No. 355.674-014). But Ruling 82-41 provides, "Job titles, in themselves, are not determinative of skill level." 1975-1982 Soc. Sec. Rep. Serv. at 852.

The DOT description of nurse assistant (DOT No. 355.674-014) is not consistent with Plaintiff's description of her job duties. The position of nurse assistant requires more than three months and up to six months of training – a "specific vocational preparation" ("SVP")[5] of four. Plaintiff testified that her training

---

[4] United States Dep't of Labor (4th ed. 1991). The DOT is the Labor Department's guide to job ability levels and, having been approved for use in Social Security cases, is the Commissioner's primary source of reliable job information. <u>See</u> 20 C.F.R. § 404.1566(d)(1).

[5] The DOT provides an SVP time for each described occupation which corresponds to the level of skill required to complete a given job. SSR 00-4p, 65 Fed. Reg. 75759-01, 75760.

9

lasted six weeks.  Tr. 157.  The DOT would categorize such a position as an SVP

level three (over one month, up to and including three months, to learn).

Specifically, the ALJ relied on the "skills" of "basic medical knowledge such as

understanding how to take vital readings, and record-keeping."  Tr. 17.  The DOT

provides that a nursing assistant "[t]akes and records temperature, blood pressure,

pulse and respiration rates, and food and fluid intake and output, as directed."  DOT

No. 355.674-014.  Yet Plaintiff provided no indication that she performed such

activities.

Ruling 82-41 states that "[t]he claimant is in the best position to describe just

what he or she did in PRW, how it was done, what exertion was involved, what

skilled or semiskilled work acctivities[sic] were involved, etc.  Neither an occupational

title by itself nor a skeleton description is sufficient."  Id. at 852.  Coincidentally,

Ruling 82-41 uses the position of "nurse aide"[6] to illustrate the point:

> A nurse aide ordinarily performs other tasks which do not provide a
> special advantage over unskilled workers, such as dusting and cleaning
> rooms, changing bed linens, and bathing, dressing and undressing
> patients.  The only duties which suggest transferable skills are those
> related to "nurse" rather than "aide" – taking and recording the rates of
> temperature, pulse and respiration; and recording food and liquid intake
> and output.  However, these occasional or incidental parts of the overall
> nurse aide job, which are a small part of a higher skilled job (nurse),
> would not ordinarily give a meaningful vocational advantage over
> unskilled work.  *The extent of such duties, however, may vary with
> individual nurse aides.*

---

[6]    Plaintiff also described her position as that of "nurse aide," Tr. 55, 60, which DOT
uses as an alternative to nurse assistant, see DOT No. 355.674-014.

1975-1982 Soc. Sec. Rep. Serv. at 850-51 (emphasis added). Per the record, Plaintiff's PRW is of the sort that did not include those "occasional or incidental parts," and there is no showing that she has "a meaningful vocational advantage over unskilled work." As Plaintiff's description essentially "trumps" the DOT, the Commissioner has failed to establish that Plaintiff acquired skills from her PRW.

Defendant points out that the VE testified the nursing assistant job afforded a "[b]asic transferability of medical knowledge and some basic documentation that's generally performed." Tr. 178. Likewise, in Pyles v. Bowen, 849 F.2d 846 (4th Cir. 1988), the VE based his conclusion not "on any specific duties Pyles performed," but rather, on the DOT's description. Id. at 848. But the court explained that there was no evidence in the record detailing specific skills Pyles had acquired which were transferable to the position named by the VE. It held that the Commissioner "must show that specific skills *actually acquired* in the former are transferable to the latter." Id. (emphasis added).

Defendant argues, "Plaintiff has failed to show that she performed the nursing assistant job in a manner that did not require her to use skills that are normally associated with that job." Def.'s Br. at 15. Yet this is not a requirement Plaintiff is obligated to fill. As with other proofs at step five of the sequential evaluation, "the burden is on the [Commissioner] to show that the claimant has skills transferable to alternative employment in the national economy." Harvey v. Heckler, 814 F.2d 162, 164 (4th Cir. 1987). See also Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir.

11

1999) ("It is not the claimant's burden to produce or develop vocational evidence at step five.").  "When an ALJ makes a finding that a claimant has transferable skills, he must identify the specific skills actually acquired by the claimant and the specific occupations to which those skills are transferable.  The ALJ's '[f]indings should be supported by appropriate documentation.'" <u>Dikeman v. Halter</u>, 245 F.3d 1182, 1185 (10th Cir. 2001) (quoting SSR 82-41, 1975-1982 Soc. Sec. Rep. Serv. at 855).

Plaintiff also contends that her ability to lift patients and bathe them are not "skills."  But the court finds no need to address this argument, as the ALJ did not rely on these duties in her transferability finding.  Plaintiff next complains that the ALJ's description of her skills was "too general, brief, and superficial to support a finding of transferability," Pl.'s Br. at 5, yet she cites to no authority which would require a lengthy listing of job attributes.[7]

Plaintiff adds that there is no evidence of any overlap between her duties as a nurse's aide and the job descriptions for either companion or personal assistant, the jobs listed by the VE and relied upon by the ALJ at step five.  Ruling 82-41 defines "transferability" as "applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or

---

[7]    As Plaintiff points out, the VE listed her transferable skills as "basic medical knowledge, understanding of various diagnosis [sic], and taking vitals, those types of things."  Tr. 179, <u>quoted in</u> Pl.'s Br. at 6.  These skills are emphasized by Ruling 82-41 as "[t]he only duties which suggest transferable skills," 1975-1982 Soc. Sec. Rep. Serv. at 851, yet the Ruling adds, "these occasional or incidental parts of the overall nurse aide job, which are a small part of a higher skilled job (nurse), would not ordinarily give a meaningful vocational advantage over unskilled work," <u>id.</u>

semiskilled jobs." 1975-1982 Soc. Sec. Rep. Serv. at 849. The regulations use three criteria to determine if skills are transferable from one job to another, see 20 C.F.R. § 404.1568(d), and the ALJ would have to identify what specific skills acquired by the claimant would be required in the new jobs, see Dikeman, 245 F.3d at 1186. The court determines that such an exercise is fruitless at this time, however, as it has found the ALJ erred in her skills finding. If, upon remand, the ALJ makes a skill finding supported by substantial evidence, the court urges her to apply the regulation's criteria in determining to which jobs such skills are transferable.[8]

2. Credibility

Plaintiff claims the ALJ erred in her assessment of Plaintiff's credibility. The ALJ is required to make credibility determinations about allegations of pain or other nonexertional disabilities. See Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985). Subjective complaints of pain are evaluated in two steps. First, the record must provide objective medical evidence showing "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(b); see also Craig v. Chater, 76 F.3d 585,

_____

[8] Plaintiff argues that the regulations impose an additional burden upon the Commissioner that "there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." Grids, § 201.00(f). This requirement, however, applies to advanced-age individuals who are found capable of only sedentary work. The ALJ found that Plaintiff was capable of a significant range of light work.

594 (4th Cir. 1996).  <u>Craig</u> makes clear that the regulations require the underlying impairment be one "which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the pain the claimant alleges she suffers*. . . . [T]he actual pain, in the amount and degree, alleged by the claimant." <u>Id.</u> at 594.

After a claimant meets this initial threshold, the second step is consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints.  <u>See</u> <u>id.</u> at 591-96; <u>see also</u> <u>Mickles v. Shalala</u>, 29 F.3d 918, 922-30 (4th Cir. 1994). The fact-finder must evaluate the intensity and persistence of the claimant's pain and the extent to which it affects his ability to work.   <u>Craig</u>, 76 F.3d at 595; <u>see also</u> 20 C.F.R. § 404.1529(c)(1).  Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also the other available evidence, including the claimant's medical history, medical signs, laboratory findings, any objective medical evidence of pain, and any other evidence relevant to the severity of the impairment, such as evidence of daily activities, specific descriptions of the pain, and medical treatment taken to alleviate it.  <u>Craig</u>, 76 F.3d at 595.  An ALJ's assessment of a claimant's credibility regarding the severity of pain is entitled to great weight when it is supported by the record.  <u>See</u> <u>Shively v. Heckler</u>, 739 F.2d 987, 989-90 (4th Cir. 1984).

14

Plaintiff disagrees with the ALJ's statement that Plaintiff's "treatment records show that she is not on any maintenance prescriptions for pain, and although she said that she took medications every day as prescribed, her treatment records suggest otherwise." Tr. 16. Cf. Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1992) (claimant's failure, inter alia, to fill prescription for painkiller, which itself was indicated for only mild pain, supported ALJ's inference that claimant's pain was not as severe as he asserted). Plaintiff first notes that she received a prescription for Relafen in October 2001, but this date precedes her AOD. Moreover, Plaintiff received this prescription for low back pain, and the records do not reveal treatment for a similar complaint until November *2003*. See Tr. 122, 147.

Meanwhile, Plaintiff had four visits at her primary care practice during 2002. None of these records reveal that Plaintiff received a prescription for a pain reliever. For three of these four visits, the records remark on Plaintiff's noncompliance. See Tr. 115-17. At her last 2002 visit, in September, she was specifically there for follow-up and refills, yet only blood pressure medication is mentioned. See Tr. 115. When Plaintiff attended her consultative examination in August 2002, she said only that she took ibuprofen and Motrin for pain. Tr. 89. See Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (the weakness of pain medication is a factor to be considered in assessing the severity of a claimant's pain). At a visit in November 2003, Plaintiff admitted that she had "never been on maintenance medicines . . . for pain control." Tr. 147.

15

Plaintiff argues that she was prescribed Celebrex and Arthrotec in April 2004, but the court notes that these prescriptions post-date her AOD by over three years, and also her date last insured. Actually, Plaintiff's records reveal that she received samples of Celebrex in November 2003, Tr. 147, and at a follow-up visit three weeks later, reported that it "worked tremendously well," Tr. 146. She added that she was "able to do a lot more at home and in her yard." Id.; see Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (if symptoms are, or can be, reasonably controlled by medication, they may not be considered disabling under the Act). Because Medicaid required prior authorization for Celebrex, the doctor gave Plaintiff samples of Arthrotec. Tr. 146.

At visits in December 2003 and January 2004, Plaintiff had no complaints of low back pain. See Tr. 145, 144. At the latter visit, Plaintiff admitted that she had not taken her Celebrex for two to three days. Tr. 144. There is mention of neither back pain nor pain relievers during Plaintiff's next visits in February and March. See Tr. 143, 142.

Hence, a review of Plaintiff's records indicate that she most likely was on a pain medication regimen since November 2003, but she was not consistently compliant therewith. Moreover, to the extent she was, the medication controlled her pain. The records are simply inconsistent with Plaintiff's testimony that she suffers constant pain at a level of nine on a one-to-ten scale. See Tr. 164.

16

Plaintiff argues that July 2004 records indicate she "still had the prescription for Arthrotec 75 and, except for a three-day period just before a hospital visit, had been taking it."[9]  Pl.'s Br. at 7 (citing Tr. 132).  She adds that the "inescapable conclusion" is that, but for at least these three days, she had been taking her medication.  Id. at 8.  This record fails to reveal, however, *why* Plaintiff stopped taking the medication, and the ALJ committed no error in assuming it was because she did not feel compelled to take it, especially given her record of noncompliance and infrequency of pain complaints.

Plaintiff concedes that her records show she often failed to take her medication, but also that she told her doctor she could not afford it.  Pl.'s Br. at 7. See 20 C.F.R. § 404.1530 (requiring a claimant to follow prescribed treatment if the treatment can restore the claimants ability to work, unless the claimant offers an acceptable reason for noncompliance).  Plaintiff's explanation misses the mark. On September 26, 2002, Plaintiff visited her primary care practice for follow-up and refills.  See Tr. 115.  She desired a change in her blood pressure medication to "something cheaper," as she was then unemployed and could not afford her current medication "most of the time."  Id.  Her physician complied.

Plaintiff, however, offers no explanation for the other instances of noncompliance.  Further, it is clear that, by November 2003, Plaintiff was receiving

---

[9]   The court fails to find in the transcript records of any hospital visits by Plaintiff.

17

Medicaid assistance.[10]  See Tr. 146; see also Tr. 159.  In addition, Plaintiff's physicians often provided her with medication samples.  See, e.g., Tr. 141, 144, 146, 147.

Plaintiff here relies on Preston v. Heckler, 769 F.2d 988, 990 (4th Cir. 1985), which the court finds inapposite.  In Preston, the court of appeals refused to affirm the district court, which based its decision on the plaintiff's "noncompliance without good cause."  769 F.2d at 990 (citing 20 C.F.R. § 404.1530).  The court determined, "No finding was made at the administrative level that the claimant was not complying with her prescribed treatment program or that she lacked good cause for failing so to comply."  Id.  Thus, it declined "to review the record to ascertain whether substantial evidence might support these findings not made."  Id.  In the instant case, the ALJ did find that Plaintiff was noncompliant with her medical treatment.  As Plaintiff, with the exception of the September 2002 visit, offered no explanation therefor, there was no "good cause" for the ALJ to find.

Although Plaintiff concedes that she was often noncompliant, she complains that the ALJ relied on her testimony that she took her medication as prescribed, likening it to perjury.  She explains that her testimony pertained to her current situation, yet the ALJ commits no error in relying upon the whole of the record, instead of a single, distinct period of time.  See SSR 96-7p, 61 Fed. Reg. 34483-01,

_____

[10]  There is no record of a caregiver visit between September 2002 and November 2003.

34485 ("When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record[.]").

Plaintiff argues that it is enough that she has pain and "the fact that [she] took very little pain medication is simply insufficient to refute that claim." Pl.'s Br. at 8. But it is *not* enough that she has pain: a claimant's inability to work pain-free is not sufficient reason to support a finding of disability. <u>Gossett v. Bowen</u>, 862 F.2d 802, 807 (10th Cir. 1988). <u>See also</u> <u>Stuckey v. Sullivan</u>, 881 F.2d 506, 509 (7th Cir. 1989) (same); <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1552 (2d Cir. 1983) (same). Nor does Plaintiff present the established standard. In assessing credibility, the adjudicator is to consider, as one of the criteria, the type and dosage of the claimant's pain medication. <u>See</u> Ruling 96-7p, 61 Fed. Reg. at 34,485 (citing 20 C.F.R. § 404.1529(c)(3)(iv)).

In addition, the ALJ did not attempt to refute that Plaintiff has pain; indeed, she found that Plaintiff "has a medically determinable impairment that could reasonably be expected to produce the pain and other symptoms [she] alleged." Tr. 16. The ALJ simply concluded that "the evidence does not support the claimant's allegations of the intensity and persistence of such pain and other symptoms," <u>id.</u>, and this finding is supported by substantial evidence.

Plaintiff adds that "her pain testimony was entitled to 'great weight' and could not be disregarded without affirmative evidence of malingering," citing to decisions of the Third and Ninth Circuit Courts of Appeal. Pl.'s Br. at 9. But these cases are

19

inconsistent with the standard in the Fourth Circuit, which follows the regulations, as explained in Craig, supra. The ALJ is required to take into account, not only the claimant's statements about her pain, but also the other available evidence, including the claimant's medical history, medical signs, laboratory findings, any objective medical evidence of pain, and any other evidence relevant to the severity of the impairment, such as evidence of daily activities, specific descriptions of the pain, and medical treatment taken to alleviate it. Craig, 76 F.3d at 595. And it is the ALJ's assessment of a claimant's credibility regarding the severity of pain that is entitled to great weight when supported by the record. See Shively, 739 F.2d at 989-90. In Plaintiff's case, the totality of the evidence supports the ALJ's credibility finding.

3.  Obesity

The ALJ found Plaintiff's obesity to be, in combination with her other impairments, "severe." As explained in Ruling 02-01p, an impairment is "'not severe' only if it is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities." 67 Fed. Reg. 57859, 57862. This determination is supposed to occur only after "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." Id.

Indeed, there is no showing the ALJ engaged in such an individualized assessment, but the court agrees with Defendant that there is no requirement that

such an exercise be set out in the decision. Nevertheless, any omission here constitutes only harmless error. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989), quoted in Shkabari v. Gonzales, 427 F.3d 324, 328 (6th Cir. 2005), Cruz-Funez v. Gonzales, 406 F.3d 1187, 1191 (10th Cir. 2005), and Federal Express Corp. v. Mineta, 373 F.3d 112, 118 (D.C. Cir. 2004). Plaintiff failed to allege obesity in her Disability Report, see Tr. 54, or to attribute to obesity any limitation. Plaintiff testified at her August 2004 hearing that she had been "in [the] 250 [pound] range" at least for the previous five years, Tr. 158, yet she only stopped working in January 2002, see Tr. 54.

In Plaintiff's records, her physicians failed to mention her obesity until 2004, and then on only two occasions. See Tr. 143, 144. Aside from the mere diagnosis, her doctor noted that she gave Plaintiff a menu planner "to help with weight reduction." Tr. 144. At Plaintiff's consultative exam, Dr. Gonzalo Fernandez recorded her weight at 259.25 pounds, and her height at five feet, five and one-half inches. Tr. 90. Although Plaintiff thought her knee pain might be related to weight gain,[11] she reported that she could walk three miles, and was walking up to four miles per day. Tr. 89. She could stand for three to four hours, and lift twenty to thirty

---

[11] There is no indication in the medical records that Plaintiff ever sought care for knee pain, and the ALJ noted that Plaintiff's counsel "did not mention the claimant's knees or problems therewith at the hearing." Tr. 15.

21

pounds.  Plaintiff's activities of daily living included cooking, making her bed, laundry, mopping, dishes, and raking the yard.

Dr. Fernandez observed that Plaintiff was able to get onto and off of the examining table, and to sit comfortably during the exam.  Tr. 90.  She was able to don and doff her shoes, with neither inconsistencies nor poor effort.  Plaintiff had only trace pedal edema and two-plus peripheral pulses in her extremities.  Her gait was normal, and she was able to tandem walk and walk on her heels and tiptoes. Tr. 91.  Plaintiff had full range of motion in all her joints, including her knees.

In spite of diagnoses of low back and knee pain, Dr. Gonzalo determined that Plaintiff should be able to stand and walk for four to six hours in an eight-hour workday with normal breaks.  He added that she had no postural limitations of bending, stooping, or crouching.  Because Plaintiff has failed to demonstrate that her obesity, in fact, caused any limitations,[12] the court refuses to find reversible error. Cf. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (claimant bears the burden of proof and production through step four of the sequential evaluation); 20 C.F.R. § 404.1512(a)("you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and ... its effect on your ability to work on a sustained basis").

---

[12]  Dr. Fernandez's RFC assessment is the only one in the record from an examining physician.  State agency medical consultants are highly qualified physicians who are also experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence.  20 C.F.R. § 404.1527(f)(2)(i) (citing 20 C.F.R. § 404.1512(b)(6)).

22

Plaintiff contends her "exertions" require her to sit with her feet elevated for two to three hours a day. She fails, however, even in her brief, to connect this allegation to her obesity. Plaintiff argues that this "limitation" was not included in the ALJ's hypothetical to the VE, presumably implying that the VE's testimony therefore does not constitute substantial evidence.

"'[F]or a [VE]'s opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments.'" Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (quoting Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)). But the hypothetical posed to the VE need only reflect those impairments supported by the record. See Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000); Cass v. Shalala, 8 F.3d 552, 556 (7th Cir. 1993).

In the instant case, there is no evidence that Plaintiff is required to elevate her feet, for *any* period. The only evidence of swelling appears in Dr. Fernandez's report, and that was only trace edema. At no point in the record, other than Plaintiff's hearing testimony, is there any indication that Plaintiff suffers any limitation from her feet swelling. Accordingly, the ALJ did not err in failing to include in the hypothetical a requirement that Plaintiff be able to elevate her feet.

23

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is not supported by substantial evidence and the correct legal principles were not applied. Therefore, IT IS RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Plaintiff's motion for summary judgment (Pleading no. 12) seeking a reversal of the Commissioner's decision should be GRANTED. To the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED. Defendant's motion for judgment on the pleadings (Pleading no. 14) should be DENIED.

WALLACE W. DIXON
United States Magistrate Judge

January 5, 2007